**UNITED STATES DISTRICT COURT**
**DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | |
|---|---|
| **Anthony Dickerson,** ) | Civil Action No.: 9:25-cv-13769-DCN |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| **TransUnion, LLC,** ) | **JURY TRIAL DEMANDED** |
| ) | |
| **Defendant.** ) | |
| _____ ) | |

## COMPLAINT

1.  This is an action brought by Plaintiff, Anthony Dickerson, for actual, statutory and punitive damages, attorneys' fees, and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq, (hereinafter "FCRA").

2.  The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

3.  The FCRA likewise demands that consumers' disputes of inaccurate information be taken seriously by the consumer reporting agencies, requiring that they do much more than simply pass information between themselves and furnishers of information electronically without actually investigating the substance of a consumer's dispute and consider all information available in conducting such investigations.

4.  Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec.

1

2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

5. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e(b) and 1681i, which are two of the cornerstone provisions of the FCRA.

6. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

## JURISDICTION AND VENUE

7. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331.

8. Venue is proper in the Beaufort Division because the Plaintiff resides in Beaufort County, and the Defendant transacted business in this division.

## PARTIES

9. Plaintiff, Anthony Dickerson, is a resident and citizen of the State of South Carolina, Beaufort County, and is over the age of twenty-one (21) years. Plaintiff is a consumer as that term is defined by the FCRA, 15 U.S.C. §1681a(c).

10. Defendant TransUnion, LLC, ("TransUnion") is a limited liability company

registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, The Prentice-Hall Corporation System, Inc., 100 Coastal Drive, Suite 210, Charleston, South Carolina 29492. At all times and in all respects relevant herein, Defendant was doing business in the state of South Carolina and in this division.

11. Defendant TransUnion is a credit reporting agency ("CRA") as defined by the Fair Credit Reporting Act, 15 U.S.C. §1681a. Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681a(d), to third parties.

12. Defendant disburses such consumer reports to third parties under contract for monetary compensation.

13. Defendant's acts and omissions alleged herein are in violation of the Fair Credit Reporting Act which requires Defendant to provide a consumer with a complete copy of their credit file upon request, to follow reasonable procedures to assure maximum possible accuracy of the information concerning the Plaintiff's credit file, and which requires Defendant to conduct a reasonable reinvestigation of disputed information received from the Plaintiff.

14. The Plaintiff alleges that Defendant repeatedly failed to delete and suppress erroneous, false, misleading, or inaccurate information from the Plaintiff's TransUnion credit file, and failed to reinvestigate Plaintiff's disputes. Defendant also disseminated Plaintiff's inaccurate credit file to third parties, causing Plaintiff to suffer damages as set forth herein.

## FACTUAL ALLEGATIONS

15. Plaintiff is the owner and operator of a funeral home which provides custom funeral services in the counties of Beaufort and Jasper.

16. In late 2023, Plaintiff discovered an unauthorized payment to Credit Strong on his bank statements. Plaintiff had no knowledge about Credit Strong and did not make this payment.

17. Thereafter, Plaintiff contacted Credit Strong directly and was informed by a representative that a line of credit in the amount of $2,500.00 had been opened in his name.

18. As Plaintiff did not apply for or open this line of credit, Plaintiff immediately instructed his bank to stop all payments to Credit Strong.

19. After doing some research, Plaintiff learned that Credit Strong was a division of Austin Capital. Accordingly, Plaintiff contacted Austin Capital directly and explained that a Credit Strong account had been opened in his name without his knowledge or permission.

20. On or about January 5, 2024, Plaintiff received a letter from Austin Capital's Operations Manager, Katy Moreno. The letter explained that Credit Strong is an online based program offered through Austin Capital designed to help consumers build credit by providing credit builder accounts to customers. The letter went on to state that the "Build $2,500" loan opened in Plaintiff's name was a 120-month term loan, and that the account was opened online and electronically signed on October 8, 2022. The letter also stated that only three payments had been made on the loan and that the loan was closed on July 27, 2023. Finally, Plaintiff was told to forward a copy of any FTC identity theft report and/or police report he filed to Austin Capital.

21. On or about April 15, 2024, Plaintiff reviewed his TransUnion credit report and discovered several fraudulent accounts were reporting as belonging to him. Specifically, Austin Capital Bank, Merrick Bank, and Comenity Bank/Wayfair were all reporting accounts in Plaintiff's name. There were also accounts that were reporting with inaccurate information: Capital One Auto Finance, Wakefield & Associates, Credit One Bank, and CPW.

22. On or about May 17, 2024, Plaintiff filed an FTC Identity Theft Affidavit.

23. On or about May 17, 2024, Plaintiff filed a complaint with the Consumer Financial Protection Bureau (hereinafter "CFPB"), wherein he stated he had reviewed his TransUnion credit report and found several fraudulent accounts opened in his name. Plaintiff stated he was upset and distressed by the discovery he had been the victim of identity theft because he was currently applying for credit. Plaintiff attached a copy of his FTC Affidavit to his CFPB complaint.

24. On or about June 22, 2024, Defendant responded to Plaintiff's complaint through the CFPB. In that response, Defendant informed Plaintiff that it had forwarded a copy of its Investigation Results to him through the US mail. Defendant also informed Plaintiff that it was not able to block the fraudulent accounts being reported on his credit report but it did contact the creditors reporting the accounts to verify their accuracy. As a result, two Midland Credit Management tradelines were removed and the NetCredit account was verified as reported.

25. In July 2024, in an effort to get the fraudulent accounts removed from his credit reports as quickly as possible, Plaintiff hired Credit Beast, a credit repair service.

26. On or about July 12, 2024, with the help of Credit Beast, three dispute letters were sent to Defendant disputing Merrick Bank, Wakefield & Associates, Credit One Bank, Austin Capital Bank, Capital One Auto Finance, Comenity Bank/Wayfair, NetCredit, and Commissioner of Publ.

27. In August 2024, Plaintiff called Austin Capital a second time and again specifically informed Austin Capital that the account was a fraudulent account opened in his name without his knowledge or consent. During that call, Austin Capital informed Plaintiff he needed to provide them with a police report.

28. On or about August 28, 2024, Plaintiff filed a report with the Beaufort County Sheriff's Department.

29. On or about August 30, 2024, Plaintiff file a second complaint against Defendant with the CFPB. In this complaint, Plaintiff requested that the Austin Capital Bank, Capital One Auto Finance, Wakefield & Assoc., Merrick Bank Corp., CPW, and CB/Wayfair accounts be deleted from his credit report.

30. On or about September 4, 2024, Plaintiff sent Austin Capital a copy of his police report and driver's license via certified mail. Austin Capital received Plaintiff's police report and driver's license on September 9, 2024.

31. On or about September 10, 2024, Plaintiff filed an FTC Affidavit.

32. Through the use of Credit Beast's credit repair service, Plaintiff learned of other accounts on his TransUnion credit report that were reporting inaccurate information and/or were fraudulently opened in his name without his knowledge or permission.

33. On or about September 13, 2024, Defendant emailed Plaintiff a letter stating it had

6

received his fraud block request, but Defendant declined to block the "ComenityBank/Wayfair Car" account.

34. On or about September 24, 2024, Plaintiff sent a letter to Defendant regarding inaccuracies on his credit report, specifically repeated charge-offs reporting for Merrick Bank.

35. On or about October 2, 2024, Plaintiff sent four separate dispute letters to Defendant through Credit Beast, wherein Plaintiff disputed Wakefield, Austin Capital Bank, Capital One Auto Finance, ComenityBank/Wayfair, Commissioner of Publ, Merrick Bank Corp, and NetCredit. Plaintiff also disputed inquiries for Capital One Auto Finance and Serpentini.

36. Defendant never investigated Plaintiff's October 2, 2024, disputes and never provided Plaintiff with reinvestigation results.

37. On or about October 5, 2024, Plaintiff received Defendant's response to Plaintiff's dispute through the CFPB. Defendant informed Plaintiff that it had investigated Plaintiff's disputes and forwarded a copy of its Investigation Results to Plaintiff by US Mail. Defendant also informed Plaintiff that its investigation resulted in Merrick Bank and NetCredit both verifying the accounts belonged to him and updating the accounts. The Capital One Auto Finance, Commissioner of Pub Wrks, Austin Capital Bank SSB, and ComenityBank/Wayfair Car accounts were each verified as reported. Finally, the Wakefield and Associates account was deleted.

38. On or about December 20, 2024, Defendant forwarded Plaintiff a letter stating it had received his Fraud Block Request. In this letter, Defendant claimed that it takes cases

of identity theft very seriously, but then refused to block the reporting of the fraudulent Select Portfolio Svcg, NetCredit, Merrick Bank and Austin Capital Bank accounts, despite receipt of Plaintiff's police report.

39. On or about the same day, December 20, 2024, Defendant forwarded its "Remedying the Effect of Identity Theft" letter to Plaintiff.

40. On or about December 30, 2024, Plaintiff obtained a copy of his TransUnion credit report. Upon reviewing his credit report, Plaintiff discovered that there were still numerous fraudulent items reporting that did not belong to Plaintiff.

41. In or around January 2025, Plaintiff terminated Credit Beast's services.

42. On or about January 10, 2025, Defendant forwarded Plaintiff Investigation Results, wherein Defendant informed Plaintiff the Select Portfolio Svcg account was verified as accurate. Defendant also informed Plaintiff that the Austin Capital Bank SSB, Capital One Auto Finance, Merrick Bank, and NetCredit accounts were each verified as accurate and updated. As a result, each of the disputed accounts remained on Plaintiff's credit report. With the Investigation Results, Defendant also included an updated TransUnion credit report dated January 10, 2025, which confirmed that Defendant continued to report all of the fraudulent accounts as belonging to Plaintiff.

43. On or about February 24, 2025, Plaintiff sent a new dispute letter to Defendant. In this letter, Plaintiff informed Defendant that several fraudulent and incorrect accounts continued to be reported on his credit report. Plaintiff again informed Defendant he had been the victim of identity theft and fraud. Plaintiff identified each of the accounts that had been opened in his name without his knowledge or permission. Specifically, Plaintiff

disputed: Austin Capital Bank SSB, Acct. #8A6189****, Capital One Auto Finance, Account #6206358026884****, ComenityBank/Wayfair Car, Account No. 778850201092, Merrick Bank, Account #412061801810, NetCredit, Account #2017SC86832****, and First Heritage Credit, Account #123**. Additionally, Plaintiff disputed hard inquiries for Capital One Auto Finance and Serpentini Chevrolet as Plaintiff did not apply for credit from either of these entities. Included with Plaintiff's letter was a letter from Capital One Auto Finance for Account No. 6206358026884 stating "Your Account is Paid in Full." Plaintiff also provided Defendant a debit card receipt for North American Recovery, the debt collector for Merrick Bank, showing the payoff payment of $1,464.18. Plaintiff requested Defendant fix his credit report so it would be correct. Plaintiff also provided his Social Security number, date of birth, and address in his letter to Defendant.

44.     On or about March 6, 2025, Defendant forwarded Investigation Results to Plaintiff stating the First Heritage Credit #123** account was deleted from Plaintiff's credit report. Defendant also included an updated copy of Plaintiff's credit report dated March 6, 2025, which confirmed deletion of the First Heritage Credit account from Plaintiff's credit report. Unfortunately, all of the other inaccurate and/or fraudulent accounts remained on his credit report.

45.     On or about March 11, 2025, Plaintiff received an email from Defendant stating it was still waiting for a response from Plaintiff's creditors regarding his disputes.

46.     Defendant received Plaintiff's February 24, 2025, dispute on March 13, 2025.

47.     On or about March 26, 2025, Plaintiff sent another dispute letter to Defendant. In this letter, Plaintiff stated he had received Defendant's Investigation Results, but there were

9

still fraudulent and incorrect accounts appearing on his credit report. Plaintiff again stated he had been the victim of identity theft and that multiple accounts were opened in his name without his permission, specifically, Austin Capital Bank SSB, ComenityBank/Wayfair Car, Merrick Bank, and NetCredit. Plaintiff also identified Select Portfolio Svcg, Account #277001736, as reporting incorrectly with late payments, when it should be reporting as a positive account with no late payments. Plaintiff also again disputed the hard inquiries for Capital One Auto Finance and Serpentini, which were still reporting on his credit report, despite Defendant stating in its March 28, 2025, Investigation Results that same had been deleted. With his dispute, Plaintiff provided a copy of the police report he filed, a copy of the payment receipt to North American Recovery, a copy of his driver's license, and a copy of his Social Security card.

48.     On or about March 28, 2025, Defendant mailed Investigation Results to Plaintiff. In these results, Defendant informed Plaintiff that the hard inquiries for Serpentini Chevrolet and Capital One Auto Finance had been deleted from Plaintiff's credit report. The ComenityBank/Wayfair Car, Austin Capital Bank SSB, Merrick Bank, and NetCredit Accounts were each verified as accurate. As a result, these inaccurate accounts continued to report as derogatory accounts belonging to Plaintiff on Plaintiff's credit report. On March 28, 2025, Defendant also forwarded Plaintiff a copy of his updated credit report, which showed that the disputed hard inquiries for Serpentini Chevrolet and Capital One Auto Finance were not deleted as Defendant stated, but were actually still reporting on Plaintiff's credit report.

49.     Defendant received Plaintiff's Second Dispute on April 3, 2025.

50. On or about April 3, 2025, Defendant mailed Plaintiff Investigation Results showing that the fraudulent Austin Capital Bank SSB Account had finally been deleted from his credit report. Defendant also forwarded Plaintiff a copy of his credit report dated April 3, 2025, which confirmed the Austin Capital Bank SSB Account had been removed form Plaintiff's credit report and that the disputed hard inquiries remained.

51. On or about April 3, 2025, Defendant also forwarded Plaintiff a letter stating it had received Plaintiff's fraud block request, but it refused to block the Comenity Bank Wayfair, Merrick Bank, NetCredit, and Select Portfolio Svcg accounts.

52. On or about April 3, 2025, Defendant also forwarded Plaintiff its "Remedying the Effect of Identity Theft" letter.

53. Just three days later, on April 6, 2025, Defendant forwarded Plaintiff new Investigation Results, wherein Defendant informed Plaintiff that the Austin Capital Bank SSB Account had been reinserted onto his credit report. Specifically, Defendant stated it had investigated the information Plaintiff disputed and the previously deleted item had since been verified. Accordingly, Defendant added it back to Plaintiff's credit report. Defendant also mailed Plaintiff a copy of his updated credit report dated April 6, 2025, which showed not only that the fraudulent Austin Capital Bank SSB Account was again reporting on Plaintiff's credit report, but the two fraudulent hard inquiries which Defendant stated it had removed were still reporting.

54. On or about April 24, 2025, Defendant forwarded Plaintiff Investigation Results, showing the ComenityBank/Wayfair Car, Select Portfolio Svcg, Merrick Bank, and NetCredit accounts were all verified as accurate. Accordingly, each of the accounts

continued to wrongfully report on Plaintiff's credit report.

55.     On or about May 7, 2025, Plaintiff sent a new dispute letter to TransUnion.  In this letter, Plaintiff again disputed the Austin Capital Bank SSB Account as a fraudulent account opened in his name without his knowledge.  Plaintiff also disputed the Comenity Bank/Wayfair Car, Merrick Bank, and NetCredit accounts as fraudulent accounts.  Plaintiff disputed the Select Portfolio Svcg account as inaccurate because it was reporting the May 2019 payment as late, when in fact it was paid on time.  Finally, Plaintiff disputed the Continental Fin Co, account reporting 30-days past due for March 2025, as he had spoken with a representative who had confirmed his payment was not past due.  With his dispute letter, Plaintiff again included a copy of the police report he filed, the debit card payment receipt to North American Recovery, and a copy of his driver's license.

56.     Defendant received Plaintiff's dispute on May 14, 2025.

57.     On or about June 7, 2025, Defendant forward Plaintiff Investigation Results showing the disputed ComenityBank/Wayfair Car account was verified as accurate, and the Austin Capital Bank SSB, Merrick Bank, and NetCredit accounts were each verified as accurate and updated.  The Continental Fin Co account pay status was updated to "Current, Paid or Paying As Agreed," but continued to erroneously report 30-days late in March 2025 in the payment history.  Finally, the Select Portfolio Svcg account was updated to correctly report that the account was paid as agreed.

58.     On or about July 8, 2025, Plaintiff was alerted that a new collection account had been added to his credit reports.  Accordingly, Plaintiff obtained a new copy of his TransUnion credit report and discovered Central Portfolio Control, Account #PLZ##****,

was reporting as a collection account for original creditor NetCredit.

59. On or about July 9, 2025, Plaintiff filed a second FTC Identity Theft Report wherein he listed Austin Capital Bank SS, Merrick Bank, NetCredit, and Comenity Bank as fraudulent accounts.

60. On or about August 4, 2025, Plaintiff sent a new dispute letter to TransUnion. In this letter, Plaintiff stated he had received Defendant's Investigation Results and, in addition to the accounts he previously disputed which were still reporting inaccurately on his credit report, a new collection account, Central Portfolio Control, Acct. #PLZ33****, had been added on behalf of the fraudulent NetCredit account. Plaintiff again disputed each of the fraudulent and/or inaccurate accounts reporting on his TransUnion credit report. With his dispute letter, Plaintiff included another copy of his police report, as well as a copy of his new FTC Identity Theft Report dated July 9, 2025.

61. Defendant received Plaintiff's dispute on August 15, 2025.

62. On or about August 19, 2025, Defendant forwarded Plaintiff a letter stating it had received Plaintiff's fraud block request, but it declined to block the disputed fraudulent accounts as the "document submitted d[id] not appear to be a copy of an official, valid identity theft report."

63. That the same day, Defendant also forwarded Plaintiff a letter regarding "Remedying the Effect of Identity Theft."

64. On or about September 10, 2025, Defendant forward Plaintiff Investigation Results, wherein Defendant informed Plaintiff the disputed Central Portfolio Control, Acct. #PLX33**** had been deleted from Plaintiff's credit report. However, the Austin Capital

Bank SSB, Comenity Bank/Wayfair Car, Continental. Fin Co, Merrick Bank, and NetCredit accounts had each been verified as accurate and thus remained on his credit report.

65.    To date, Defendant continues to wrongfully refuse to block the fraudulent Austin Capital Bank SSB, ComenityBank/Wayfair Car, Merrick Bank, and NetCredit accounts from Plaintiff's TransUnion credit file.  Accordingly, each of those fraudulent accounts continues to be reported on Plaintiff's credit report as a derogatory account belonging to Plaintiff.  Defendant also continues to inaccurately report the Continental Fin Co account as 30 days late for March 2025.  Finally, Defendant continues to report two fraudulent hard inquiries which occurred on March 4, 2024.

66.    Plaintiff is working to purchase a home for his family, but Defendant's continued refusal to remove and/or correct the fraudulent and inaccurate accounts from Plaintiff's credit report is preventing Plaintiff from being able to purchase a home.

67.    Defendant repeatedly failed to make a reasonable investigation into Plaintiff's disputes.

68.    Defendant wrongfully reinserted the fraudulent Austin Capital Bank SSB account back onto Plaintiff's TransUnion credit report.

69.    Upon receipt of the ACDV responses from the furnishers of the disputed account information,  Defendant simply accepted the furnishers' verifications of the accounts and did not undertake to perform any investigation of its own.

70.    For over 35 years, courts have recognized that a CRA cannot rely upon its data furnishers exclusively, when the consumer disputes the accuracy of the furnishers'

information. The CRA must make some independent investigation of its own. "Merely reporting whatever information the creditor furnished was not reasonable, especially where the defendant knew of the impending dispute between the [consumer] and [furnisher]." *Swoager v. Credit Bureau of Greater St. Petersburg,* 608 F.Supp. 972 (M.D. Fla. 1985); *see also Bailey v. TransUnion Credit Info. Servs.,* 2016 U.S. Dist. LEXIS 196516, 2016 WL 11540113 (N.D. Ga. Nov. 28, 2016); *Crane v. TransUnion*, 282 F. Supp. 2d 311 (E.D. Pa. 2003)(explaining that a CRA must "go beyond the original source" to satisfy its duties to investigate).

71. If the CRA knows or should know that the furnisher is unreliable, then a "reasonable reinvestigation" may require verifying the accuracy of the furnisher's information directly. The "grave responsibility" imposed by §1681i(a) must consist of something more than merely parroting information received from other sources. *Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997).

72. Defendant's knowing and repeated violations of the FCRA warrants an award of punitive damages. *See, e.g., Younger v. Experian Info. Sols. Inc.,* Case No. 2:15-cv-00952-SGC, at *30 (N.D. Ala. Mar. 21, 2019) (awarding punitive damages for repeated, willful violations of the FCRA).

73. While Defendant has continued to report false, fraudulent, and inaccurate information on Plaintiff's credit reports, those credit reports have been viewed by Navy FCU, Mission Lane, Granite Bay Acceptance Company, Progressive Insurance, Debthunch, Advantage 1st Financial, LLC, Capital One, First National Credit Card, FSB Blaze Credit Card, TAB/Mission Lane, EC Hilton Head Regional Medical Center, TD Banknorth, CPC

Credit Vision, Verizon Wireless, Jewelers Mutual Insurance, First National Credit Card, GMFinancial, First Sav BankBlaze, Ally Financial, Lenders Protection, LLC, and Pagaya.

## COUNT ONE
(Fair Credit Reporting Act)

74. The Plaintiff adopts the averments and allegations of paragraphs 15 through 73 hereinbefore as if fully set forth herein.

75. Defendant maintains and distributes credit data files on the Plaintiff's credit. Defendant negligently failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

76. Defendant repeatedly failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

77. As a result of Defendant's negligent violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to fix his TransUnion credit report, physical pain and sickness, frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

78. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

79. In addition, the Plaintiff has incurred litigation expenses and attorney's fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

80. Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681n(a).

## COUNT TWO
(Fair Credit Reporting Act)

81. The Plaintiff adopts the averments and allegations of paragraphs 15 through 80 hereinbefore as if fully set forth herein.

82. Defendant willfully failed to comply with the requirements imposed under the FCRA, 15 U.S.C. §1681 et seq., including but not limited to: (a) failing to follow reasonable procedures to assure maximum possible accuracy of the information in consumer reports, as required by 15 U.S.C. §1681e(b); (b) failing to comply with the reinvestigation requirements in 15 U.S.C. §1681i; and (c) failing to block the reporting of fraudulent information, as required by 15 U.S.C. §1681c-2(a).

83. Defendant willfully failed to delete and suppress erroneous, false, misleading, and/or inaccurate information from the Plaintiff's credit file.

84. Due to Defendant's willful failure to comply with the requirements of the Fair Credit Reporting Act, Plaintiff is entitled to statutory damages.

85. As a result of Defendant's willful violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, damage to Plaintiff's credit score and credit reputation, denial of credit, lost credit opportunities, anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, family discord, time spent trying to correct his TransUnion credit report, physical pain and sickness,

frustration, humiliation, embarrassment, mental anguish, and out of pocket expenses.

86.     Plaintiff is entitled to actual damages in an amount to be determined by the jury.

87.     In addition, the Plaintiff has incurred litigation expenses, and attorney's' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

88.     Further, Defendant's acts and omissions were willful and demonstrate a reckless disregard for the Plaintiff's rights.  Therefore, Defendant is liable to the Plaintiff for punitive damages in an amount to be determined by the jury.

89.     Plaintiff is entitled to his attorney's fees, pursuant to 15 U.S.C. §1681o(a)(2).

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against Defendant for the following:

A.     Actual and statutory damages from Defendant pursuant to 15 U.S.C. §1681n(a)(1)(A) and/or 15 U.S.C. §1681o(a)(1);

B.     Punitive damages from Defendant pursuant to 15 U.S.C. §1681n(a)(2);

C.     Costs and reasonable attorney's fees from Defendant pursuant to 15 U.S.C. §1681n(a)(3) and/or 15 U.S.C. §1681o(a)(2); and

D.     For such other and further relief as the Court may deem just and proper

*/s/ Penny Hays Cauley*
Penny Hays Cauley, Fed.  ID No.  10323
Attorney for Plaintiff

**OF COUNSEL:**
HAYS CAULEY, P.C.
1303 West Evans Street
Florence, SC 29501


(843) 665-1717
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

　　　　　　　　　　　　　　　　*/s/ Penny Hays Cauley*
　　　　　　　　　　　　　　　　Of Counsel


**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Trans Union, LLC
c/o The Prentice-Hall Corporation System, Inc.- Registered Agent
100 Coastal Drive, Suite 210
Charleston, SC 29492